UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSEPH JEROME GRAHAM,

                Petitioner,

v.

GREGORY SKIPPER,

                Respondent.

_____/

Case No. 1:21-cv-755

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Joseph Jerome Graham is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  Following a one-day bench trial in the Wayne County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529.  On August 29, 2017, the court sentenced Petitioner to a prison term of 15 to 30 years.

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

> This case arises out of defendant's commission of armed robbery at a Rite Aid store on September 23, 2016.  Bessie Watkins, a Rite Aid employee, testified at the preliminary examination that defendant came into the store and used a box cutter to try to remove antitheft devices from some razor packages in the store. Watkins tried to push the razors away from defendant.  Defendant pointed the box cutter toward Watkins's chest area and stated that she could not stop him and that he was going to get what he came for.  Watkins testified that she felt threatened. Defendant then grabbed four packages of razors off the shelf and left the store without paying for them.  Watkins later identified defendant in a photographic array and at the preliminary examination as the person who committed the crime.

> At trial, the trial court admitted Watkins's preliminary examination testimony into evidence after determining that she was unavailable at the time of trial due to a physical illness.  The trial court also admitted into evidence Rite Aid video surveillance footage of the incident and two letters defendant had written to the trial court.  Defendant chose not to testify and did not present any evidence or witnesses.  In closing argument, defense counsel conceded that defendant had stolen the razors and had used the box cutter to bypass antitheft devices but disputed that defendant had threatened Watkins with the box cutter.  The trial court found defendant guilty of armed robbery and sentenced him, as a second habitual offender, to 15 to 30 years' imprisonment.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.43–44.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals raising the same issues he raises in his habeas corpus petition.  By opinion issued October 22, 2019, the court of appeal denied relief and affirmed the trial court.

2

(Mich. Ct. App. Op., ECF No. 2-1, PageID.43–52.)  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  That court denied leave initially by order entered September 8, 2020,  (Mich. Order, ECF No. 2-2, PageID.87),  and upon reconsideration by order entered November 24, 2020, (Mich. Order, ECF No. 2-3, PageID.89).

During August of 2021, Petitioner timely filed his habeas corpus petition raising four grounds for relief, as follows:

I.    The state court decisions were contrary to, or involved an objectionably unreasonable application of clearly established federal law, and/or an objectionably unreasonable determination of the facts in light of the evidence presented in the trial court, when it denied that Mr. Graham's trial lawyers denied Mr. Graham Sixth Amendment right to the effective assistance of counsel when both of his trial lawyers failed to investigate if he had any prior non-threatening contacts with the complaining witness.

II.   The state court decisions were contrary to, or involved an objectionably unreasonable application of clearly established federal law, and/or an objectionably unreasonable determination of the facts in light of the evidence presented in the trial court, when it denied that, the trial court erred by finding that an uncharged alleged crime counted as a felony and as a crime against a person for purposes of scoring OV 13 at 25 points.

III.  The state court decisions were contrary to, or involved an objectionably unreasonable application of clearly established federal law, and/or an objectionably unreasonable determination of the facts in light of the evidence presented in the trial court, when it denied that, the trial court erred in sentencing Mr. Graham to 15 to 30 years in the MDOC, a minimum sentence of 15 years is not [a] reasonable or proportionate sentence.

IV.   The state court decisions were contrary to, or involved an objectionably unreasonable application of clearly established federal law, and/or an objectionably unreasonable determination of the facts in light of the evidence presented in the trial court, when it denied that, the trial court erred and violated Mr. Graham's Sixth amendment right to confront witnesses against him in finding that the complaining witness was an unavailable witness pursuant to MRE 804(a)(4) on the day of trial and erred in allowing the complaining witness's testimony from the preliminary exam to be admitted into evidence at trial.

(Pet., ECF No. 1, PageID.4–7.)

3

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

4

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ineffective assistance of counsel-failure to investigate (habeas ground I)

Petitioner argues that his defense counsel rendered ineffective assistance because they failed to investigate his prior thefts from Rite Aid stores where Rite Aid employee Watkins was present.  According to Petitioner, if counsel had investigated those thefts, they would have found that he had never threatened Watkins before and that Watkins did not likely feel threatened when Petitioner wielded the box cutter in her presence during the September 23, 2016, robbery.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance

6

prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.

A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

The defendant bears the burden of overcoming the presumption that the challenged action might

be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see

also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

decisions were hard to attack).  The court must determine whether, in light of the circumstances as

they existed at the time of counsel's actions, "the identified acts or omissions were outside the

wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief

if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court

reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of

*Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*,

563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances,

the question before the habeas court is "whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir.

2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

The Michigan Court of Appeals applied the following standard to resolve

Petitioner's ineffective assistance of counsel claim:

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defense counsel is afforded wide discretion on matters of trial strategy, *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013), and the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy, *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). The fact that a strategy may have failed does not establish ineffective assistance of counsel. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

(Mich. Ct. App. Op., ECF No. 2-1, PageID.44–45.) Although the Michigan Court of Appeals cited state authority as the source of the standard, that authority relies on *Strickland*. *People v. Lane*, 862 N.W.2d 446, 465 n. 65 (Mich. Ct. App. 2014). Thus, it cannot be said that the state court applied the wrong standard.

The Michigan Court of Appeals rejected the claim for multiple reasons. This Court will focus on two of them:

Aside from the self-serving affidavit of defendant's appellate counsel,[1] the record is bereft of factual support for defendant's contention that he committed

---

[1] The facts supporting Petitioner's contention regarding his prior contacts with Ms. Watkins were provided by an affidavit from his appellate counsel:

As part of investigating Mr. Graham's appeal, undersigned interviewed Mr. Graham who indicated to undersigned that Ms. Watkins made up the allegation of feeling threatened because she could never stop him. (See Affidavit and Offer of Proof of Ian Kierpaul) (Attached as Exhibit C). Undersigned asked follow up questions, to wit, what do you mean by could never stop you. (*Id.*). Mr. Graham informed undersigned that Ms. Watkins knew who he was because he went into the Rite Aid before to steal some items. (*Id.*). She also knew him from another Rite Aid store located at Livernois and Ewald Circle because he would also go there to steal items. (*Id.*)

prior nonthreatening larcenies at Rite Aid stores and that Watkins was present during those larcenies.  And there is no evidence that Watkins fabricated her testimony that defendant threatened her with the box cutter because she was "tired" of defendant constantly stealing items from Rite Aid; this comprises mere speculation. Defendant's argument thus fails because he has not established the factual predicate for his claim. *Douglas*, 496 Mich at 592.

\* \* \*

Moreover, defense counsel pursued a reasonable trial strategy of conceding that defendant stole razors from the Rite Aid store but arguing that he did not use the box cutter to threaten Watkins, such that, according to the defense theory, defendant was not guilty of armed robbery.  In her closing argument, defense counsel argued that Watkins's behavior as shown on the surveillance video and as reflected in her own testimony was not that of someone who felt threatened or fearful, given that she attempted to push the razor packages away from defendant and walked with him to the door as he was leaving.  Although the strategy ultimately failed, this does not establish that counsel was ineffective. *Stewart*, 219 Mich App at 42.  This strategy had the advantage of not presenting at trial evidence that defendant was an admitted habitual larcenist, which could have potentially exposed him to further criminal liability and undermined his credibility.  And if defendant had argued at trial that he had a policy of being nonthreatening when committing larcenies of convenience stores, the prosecutor could have presented evidence to rebut this claim, given that the parole violation report indicates that defendant engaged in assaultive conduct when attempting to commit a similar larceny at a CVS store on November 20, 2016.  Therefore, defendant's ineffective assistance claim fails because it cannot be concluded that the purported failure to investigate this matter undermines confidence in the trial's outcome.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.45–46.)

The Michigan Court of Appeals found that there was no record support for Petitioner's contention that, in fact, he had previously robbed Rite Aid stores in Ms. Watkins presence without acting in a threatening manner.  Thus, there is nothing in the record to support the claim that the investigation counsel failed to perform would have borne fruit.

---

Neither of Mr. Graham's trial lawyers asked him if he had any prior contacts with Ms. Watkins.  (*Id*.).  Mr. Graham insists that all his prior contacts with Ms. Watkins were non-threatening because he just wanted to steal some items and get out of the store.  (*Id*.).  Ms. Watkins was unable to ever stop Mr. Graham from stealing.  (*Id*.).  Mr. Graham did admit to undersigned that he never informed his lawyers of his prior contacts with Ms. Watkins.  (*Id*.).

(Pet'r's Appeal Br., ECF No. 2-1, PageID.66–67.)  The affidavit is clearly not based on firsthand knowledge.

As noted above, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  In response, Petitioner claims that his case file was provided to his trial attorneys and that the file included "multiple parole violations, police reports, and witness statements of the petitioner['s nonthreatening and numerous larcenies against the same Rite Aid location, which all involved the witness (Watkins) from which this case occurred."  (Pet'r's Br., ECF No. 2, PageID.27.)  Petitioner's unsworn statement, however, is not clear and convincing evidence of any of those factual averments.  Moreover, he offers no proof that his "case file," even if it included those materials, was part of the trial court record that was before the court of appeals. The Court, therefore, presumes that the appellate court's determination that the record does not factually support Petitioner's claim is correct.  Absent evidence that there was any evidence for Petitioner's counsel to exploit, or any evidence to support further investigation, Petitioner has failed to show that his counsel's performance was objectively unreasonable or that Petitioner was prejudiced as a result.  Absent any factual foundation for his claim, Petitioner is not entitled to habeas relief.

Even if the record were replete with evidence of Petitioner's prior larcenies from the Rite Aid stores, and even if it were apparent that Ms. Watkins was present and in contact with Petitioner during each theft, Petitioner has still not met his burden of demonstrating ineffective assistance of counsel.  The court of appeals concluded that it was a reasonable trial strategy to focus on the inconsistency between Ms. Watkins's claim that she felt threatened and her continued confrontation with Petitioner after the threat.  Setting aside that (1) it is generally not a beneficial strategy to present evidence to the factfinder that a defendant has committed a string of prior

crimes, and (2) inquiry into those crimes would necessarily open the door to the prosecutor's exploration of Petitioner's subsequent assaultive larceny from a CVS store, the inference upon which Petitioner's proposed strategy depends—that if Ms. Watkins had been present during Petitioner's prior larcenies she would not feel threatened by his wielding of a box cutter during this larceny—is hardly compelling.

Moreover, to show that there might be some other strategy is not enough, to prevail under *Strickland*'s doubly deferential standard, Petitioner must demonstrate that the court of appeals' identified strategy was unreasonable.  He has not and he cannot.  Therefore, even if Petitioner's failure to investigate claim was supported by facts of record, he would not be entitled to habeas relief because it would not be unreasonable for counsel to forego Petitioner's proposed approach in favor of focusing on the surveillance video of this larceny.

### B.    Offense variable scoring (habeas ground II)

Petitioner next complains that the trial court erred when it relied on facts taken from a parole violation report in scoring 25 points for offense variable 13 regarding a continuing pattern of criminal behavior.  Petitioner does not appear to dispute the facts stated in the report regarding a subsequent assaultive larceny from a CVS store; he simply contends that the court should not have considered it because a parole violation report "is akin to a slip of paper containing incidents unproven, hollow, and in essence: a degree much lower than the authority that the [presentence investigation report] is legislated."  (Pet'r's Br., ECF No. 2, PageID.32.)  Therefore, Petitioner claims, "[t]he prosecutor failed to establish by a preponderance of the evidence that [Petitioner] committed a larceny."  (*Id.*, PageID.33.)  The court of appeals disagreed:  "The trial court did not err in relying on information contained in the parole violation report given that the rules of evidence did not apply and the parole violation report was akin to a presentence investigation report."  (Mich. Ct. App. Op., ECF No. 2-1, PageID.47.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Nonetheless, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980; *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

 Additionally, Petitioner's suggestion that the source of the facts was not reliable such that the evidence did not preponderate does not raise a federal constitutional issue.  The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial."  *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc).  "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."  337 U.S. 241, 246 (1949).  That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence."  *Id*. at 247.  An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[2] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ." *Id.* at 92 n.8.[3]

　　　　Petitioner's argument suggests that the federal constitution requires that, at the very least, facts in support of Offense Variable scoring must be proved by a preponderance of the evidence. There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process. *See, e.g., United States v. Watts*, 519 U.S. 148, 156 (1997). *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was not an attempt to establish the bottom

---

[2] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[3] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id.* at 695 n.20. Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt." There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses. It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

limit of constitutional propriety, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[4]

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution.  Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review.

### C.    Unreasonable or disproportionate sentence (habeas ground III)

Petitioner next contends that his sentence was unreasonable and disproportionate. Petitioner refers the Court to his court of appeals brief.  His argument there is founded upon *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), regarding proportionate sentences, and *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), regarding reasonable sentences.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion.  *Steanhouse*, 902 N.W.2d at 335.  The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis.  *Id*. at 335–37.  In other words, a sentence departing from the guidelines

---

[4] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the due process clause, but because anything lower than "more likely than not" is not really persuasive at all.

is unreasonable if it is disproportionate.  Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts.  *Id.*

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

There are federal constitutional limits on the scope of punishment.  The Eighth Amendment forbids punishment that is cruel and unusual.  But the Eighth Amendment does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed

and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

### D.     Confrontation Clause violation (habeas ground IV)

Finally, Petitioner contends that the trial court's consideration of Ms. Watkins's preliminary examination testimony in lieu of her live testimony violated his rights under the Confrontation Clause.  The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  The State of Michigan

has incorporated those principles into the Michigan Rules of Evidence as an exception to the hearsay rule.  *See* Mich. R. Evid. 804(b)(1).

The Michigan Court of Appeals concluded that both *Crawford* conditions to admissibility were met.   Petitioner attacks both determinations.  He claims that the prosecutor's showing that Ms. Watkins was hospitalized on the date of trial did not suffice to establish her unavailability.  He claims further that the preliminary examination should not count as a prior opportunity for cross-examination.

### 1.    Unavailability

With regard to unavailability, the appellate court concluded that Petitioner was barred from contesting Ms. Watkins's unavailability on appeal:

> As an initial matter, we conclude that defendant has waived the issue of whether the prosecution presented sufficient evidence of Watkins's unavailability for trial by conceding at trial that she was unavailable.  *See People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (noting that "waiver" is "the intentional relinquishment or abandonment of a known right[]" and that "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error[]") (quotation marks and citations omitted).  Even if he had not waived the issue, he would not be entitled to relief because "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *People v Siterlet*, 299 Mich App 180, 191; 829 NW2d 285 (2012) (quotation marks and citation omitted), judgment affirmed in part, vacated in part on other grounds *People v Siterlet*, 495 Mich 919 (2013).  At trial, defense counsel conceded that Watkins was unavailable on the date of trial but argued that she was "not indefinitely unavailable.  We know her whereabouts."  It appears from this comment that that defense counsel was in effect asking for a continuance (albeit not by name).  However, because defense counsel conceded that Watkins was unavailable at that time, defendant is precluded from seeking relief on appeal premised on the contrary position that Watkins was not unavailable at the time of trial.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.50) (footnote omitted).  The Michigan Court of Appeals would not address the "unavailability" issue on the merits because Petitioner conceded the issue at trial.  Petitioner's concession, or waiver, therefore, is a form of procedural default.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436–37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The court of appeals explained that it would not consider Petitioner's "unavailability" arguments on appeal because "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." (Mich. Ct. App. Op., ECF No. 2-1, PageID.50) (internal quotes omitted). The Michigan appellate courts have regularly applied that rule for decades. *See, e.g., Living Alternatives for Developmentally Disabled Inc. v. Dep't of Mental Health*, 525 N.W.2d 466, 467 (Mich. Ct. App. 1994), and cases citing *Living Waters*.

Because Petitioner procedurally defaulted his "unavailability" challenge in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See*

*House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner has not attempted to make that showing.

Petitioner has also not offered cause for his failure to comply with the rule.  He does not claim counsel's performance regarding this issue was objectively unreasonable; instead he claims that counsel's words and actions did not constitute a waiver or were not inconsistent with a subsequent challenge to Ms. Watkins's availability.  On that state law question, however, the Court is bound by the court of appeals' determination to the contrary.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Accordingly, this Court's review of Petitioner's challenge to Ms. Watkins's "unavailability" is barred by his procedural default.

Even if review were not barred by Petitioner's procedural default, he would not succeed on the merits.  The court of appeals noted that "[t]he only relevant reference point for determining physical or mental illness or infirmity [as a ground for unavailability] is the point when the witness would be called to testify."  (Mich. Ct. App. Op., ECF No. 2-1, PageID.50 n.6.) It was undisputed that Ms. Watkins was hospitalized on the date of Petitioner's trial.  He offers no clearly established federal law that is contrary to the appellate court's statement nor does he show

20

that the statement represents an unreasonable application of clearly established federal law.

Therefore, Petitioner has not established entitlement to habeas relief on the merits either.

### 2.     Prior opportunity for cross-examination

The Michigan Court of Appeals rejected on the merits Petitioner's claim that he did

not have a prior opportunity to cross-examine Ms. Watkins:

> Defendant also argues that, even if Watkins was unavailable, the trial court erred in admitting her preliminary examination testimony under MRE 804(b)(1) because the defense attorney who conducted the preliminary examination was not the same defense attorney who represented defendant at trial.  Defendant concedes that he had an opportunity to cross-examine Watkins at the preliminary examination, but contends that he did not have a similar motive because the issues at the preliminary examination differed from those at trial.  We disagree.  The admissibility of the prior testimony of a witness "is within the proper exercise of discretion by the trial court[,]" and this Court will not reverse the trial court's decision absent an abuse of discretion.  *People v Morris*, 139 Mich App 550, 555; 362 NW2d 830 (1984).  A trial court has not abused its discretion if its decision results in an outcome within the range of reasoned and principled outcomes.  *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).
>
> Michigan's rules of evidence provide in relevant part that if a witness is unavailable, testimony given by the witness at another hearing is admissible "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  MRE 804(b)(1).  "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding."  *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007).
>
> The record demonstrates that Watkins's preliminary examination testimony was relevant to the issue presented at trial: whether defendant made Watkins feel threatened while using a box cutter to steal razors from a Rite Aid. The primary purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime has been committed and whether there is probable cause to believe that the accused committed it.  MCR 6.110(E); see *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989).  The purpose of the trial was to determine whether defendant was guilty or innocent of the crime associated with the actions Watkins described.  See *People v Barbara*, 400 Mich 352, 411; 255 NW2d 171 (1977) ("The purpose of a trial is to determine the guilt or innocence of the defendant.").  In both instances, Watkins's testimony was used to establish the occurrence of a crime; thus, in both instances, defendant had a similar motive to discredit her testimony.  *Farquharson*, 274 Mich App at 275.

21

Additionally, defense counsel actually cross-examined Watkins at the preliminary examination.  The essence of defendant's argument is that he, through counsel, did not cross-examine Watkins on the right issues.  Whereas his focus at the preliminary examination was on discrediting Watkins's identification of him, his focus at trial was on discrediting her claim that he threatened her with a box cutter.  However, Watkins testified at the preliminary examination that defendant made her feel threatened; this was not new information at the time of trial.  Defendant's decision not to probe her testimony regarding feeling threatened and to change emphasis for purposes of the trial does not negate the fact that he had an opportunity to submit all of Watkins's preliminary examination testimony, including her testimony that she felt threatened when defendant turned to her with a box cutter, to a thorough cross-examination.  Defendant notes that a preliminary examination differs from a trial in various respects, but that is true in every case, and this Court has upheld the admission of preliminary examination testimony at trial when a witness was unavailable at trial and ample opportunity for cross-examination was afforded at the preliminary examination.  See *People v Wood*, 307 Mich App 485, 518; 862 NW2d 7 (2014), vacated in part on other grounds 498 Mich 914 (2015).

(Mich. Ct. App. Op., ECF No. 2-1, PageID.50–51.)  The appellate court's analysis is focused on

the requirements of the Michigan Rule of Evidence.  Those requirements, however, are in no way

inconsistent with clearly established federal law regarding the Confrontation Clause.

The Supreme Court has clearly established that out-of-court testimonial statements

may be admitted at a criminal trial where the witness is unavailable to testify and the defendant

had a prior opportunity for cross-examination.  *Crawford*, 541 U.S. at 59.  The trial court concluded

that Watkins was unavailable to testify at Petitioner's trial and, despite Petitioner's contention that

the preliminary examination cross-examination was not adequate, Petitioner had a prior

opportunity for cross-examination.

The Sixth Circuit has noted that there exists "some question whether a preliminary

hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation

Clause purposes."  *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–38 (6th Cir. 2010) (citing, *inter*

*alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to

question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding

of the Confrontation Clause's guarantee of an opportunity for effective cross-examination")
(internal quotation marks omitted)).  Thus, Petitioner's challenge is certainly colorable.  But the
Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause
when a witness is unavailable at trial and the court admits the witness's preliminary examination
testimony.  *Id.*, 379 F. App'x at 438. As a result, in the context of a federal court sitting on habeas
review, the Sixth Circuit has concluded that a state court's determination that testimony from the
preliminary examination was properly admitted was not an unreasonable application of clearly
established Supreme Court precedent.  *Id.*, 379 F. App'x at 438–40; *see also Williams v. Bauman*,
759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review
the admission of testimony from the petitioner's own preliminary examination).   Therefore,
Petitioner has failed to show that the state court's determination that he had a prior opportunity to
cross-examine Ms. Watkins sufficient to overcome any Confrontation Clause concern is contrary
to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to
habeas relief.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of
appealability should be granted.  A certificate should issue if Petitioner has demonstrated a
"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of
a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).
Rather, the district court must "engage in a reasoned assessment of each claim" to determine
whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth
by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.
Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

   The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

   The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  October 6, 2021     /s/ Robert J. Jonker
                 ROBERT J. JONKER
                 CHIEF UNITED STATES DISTRICT JUDGE